UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
================================================================

DONALD WINSLOW,

                    Plaintiff,


-v.-                                              3:11-cv-00052  NPM



MICHAEL ASTRUE,
Commissioner of Social Security,

                    Defendant.


-------------------------------------------------------------------------------------------------
APPEARANCES:                          OF COUNSEL:

Lachman & Gorton                      Peter A. Gorton, Esq.
Attorney for Plaintiff
1500 E. Main Street
P.O. Box 89
Endicott, NY 13761-0089


Social Security Administration        Kristin D. Cohn, Esq.
Attorneys for Defendant               Jennifer S. McMahon, Esq.
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, NY 10278


NEAL P. McCURN, Senior District Court Judge

## MEMORANDUM - DECISION AND ORDER

        This action was filed by plaintiff Donald Winslow ("plaintiff") pursuant to

42 U.S.C. § 405(g) to review the final determination of the Commissioner

("Commissioner") of the Social Security Administration ("SSA"), who denied his

application for disability insurance benefits ("DIB") and Supplemental Security

Income ("SSI").  Currently before the court is plaintiff's motion for judgment on

the pleadings (Doc. No. 14) seeking reversal of the Commissioner's decision with

a finding of disability, or in the alternative, an order of remand for a new hearing.

Also before the court is the Commissioner's motion for judgment on the pleadings

(Doc. No. 15) seeking affirmation of the Commissioner's findings.  For the

reasons set forth below, the Commissioner's motion is granted, and plaintiff's

motion is denied.

**I.    Procedural History and Facts**

  A.    Procedural History

   Plaintiff did not submit a procedural history, and the Commissioner's

history contains errors, including an incorrect date for plaintiff's application of

benefits.  The application date in the notice of disapproved claim was also

incorrect.  Accordingly, the court used the parties' submissions as a guide but

compiled the following information from the record.  On December 7, 2007,

plaintiff filed a Title XVI application for supplemental security income benefits

("SSI").  On December 18, 2007, plaintiff protectively filed a Title II application

for a period of disability and disability insurance benefits ("DIB").   Plaintiff

alleged disability beginning September 25, 2007.  Plaintiff's claims were initially

denied on February 8, 2008.  Plaintiff filed a written request for a hearing on

February 27, 2008.  On February 10, 2009, plaintiff appeared for a video hearing

in Binghamton, New York.  Administrative Law Judge Dennis O'Leary ("the

ALJ") presided over the video hearing from Newark, New Jersey. Tr.[1] 11.   The

ALJ rendered an unfavorable decision on April 24, 2009, finding plaintiff not

disabled.  Plaintiff appealed, and on December 17, 2010, the Appeals Council

denied plaintiff's request for review. Tr. 1.  This action followed.

      B.    Facts

The following facts are taken from the record and the plaintiff's statement

of the facts,[2] which is incorporated by reference by the Commissioner with the

exception of any inferences, suggestions or arguments therein.  The Commissioner

submits additional facts, and the court adds relevant facts from the record as it

deems necessary.

Plaintiff was born December 29, 1962 and worked at manual labor jobs until

his alleged disability.  Plaintiff states that he dropped out of school in either the

---

[1]     Transcript of the record on review, hereafter "Tr. _."

[2]     Plaintiff's statement of the facts is poorly organized and less than comprehensive, with almost no mention of the October 25, 2007 myocardial infarction upon which plaintiff bases his disability.  Accordingly, the court supplements the facts on this issue from the Commissioner's brief and from the record.

3

eighth or ninth grade, and alleges that he cannot read and understand a newspaper, could not complete the forms for Social Security, and could not read the forms sent to him regarding his DIB and SSI claims.   Plaintiff alleges that he needs help with a checking account and needs to have others pay his bills.  Plaintiff has a history of cigarette smoking, diabetes mellitus, and morbid obesity.

On October 25, 2007, plaintiff was seen at the Lourdes Hospital emergency department for complaints of chest pain and numbness in both arms.  The attending physician reported that plaintiff was moderately obese and appeared very anxious. Plaintiff's heart rate was regular and the rhythm was good.   His chest x-ray and electrocardiogram  ("EKG") were normal.  It was determined that plaintiff was experiencing a non-ST elevation myocardial infarction.  His chest pain was resolved with medication and he was admitted for observation and referred for cardiac catheterization and nonsurgical revascularization.  The heart catheterization revealed, inter alia, a very dominant right coronary artery with mild irregularities and plaintiff's left circumflex showed a 90%  near-ostial lesion which was stented with a 3.0 mm x 12 mm Taxus drug eluting stent.  Plaintiff was discharged with a diagnosis of coronary artery disease with a non-Q-wave myocardial infarction, status post-successful angioplasty, and stenting of a 90% circumflex lesion; morbid

obesity[3]; diabetes; history of smoking; and dyslipidemia.  Plaintiff was advised to continue on aspirin and Plavix.  He was released with instructions for no heavy lifting for one week, and no work for two weeks.  The record reveals that plaintiff never returned to work after this incident.

On November 13, 2007, plaintiff was seen at Diabetic Care Associates ("DCA") by Dr. Ramanujapur Ramanujan ("Dr. Ramanujan"), an endicrinologist, for complaints of chest pain after wrestling with his grandchildren.  Plaintiff's physical exam was normal except for evidence of a cough and some pain mid-sternum.  Plaintiff was referred to the Wilson Memorial Regional Medical Center ("Wilson Hospital")[4] emergency room's chest clinic.

On January 1, 2008, plaintiff was again seen at Wilson Hospital for chest pain, alleging that  he woke up in the middle of the night with sweating, nausea and vomiting, shortness of breath and chest pain.  A single chest x-ray was taken, and the heart and mediastinal contours appeared normal.  Bones and soft tissue were grossly normal, no pleural disease was seen, and the lungs were clear.  There was no evidence of acute cardiopulmonary disease.   However, a repeat cardiac catheterization was ordered.   The diagnosis from that angiogram was as follows:

---

[3]        Plaintiff's height was 5'11"; weight was estimated at 285-290 pounds. Tr. 163.

[4]        Wilson Hospital is also referred to as United Health Services Hospital.

good result from stenting of the ostium of the circumflex artery leading into a high marginal (ramus branch); chronic total occlusion of small lateral marginal branch circumflex artery with right to left collateral; mild disease of other coronary arteries; and mild left ventricular systolic function.  Medical management was recommended upon discharge.

On January 28, 2008, plaintiff was seen by Dr. Afzal ur Rehman ("Dr. Rehman") at Cardiology Associates.  Plaintiff's weight was 301 pounds.  Plaintiff's complaints included chest pain and that his fingers were occasionally of a bluish tint.  Dr. Rehman reported that plaintiff's heart and chest exams were normal, and his EKG was normal.

On February 5, 2008, plaintiff was consultatively examined by Dr. Justine Magurno ("Dr. Magurno").   Plaintiff reported a New Year's Eve heart attack, and that he had fallen and hurt his wrist during the alleged second heart attack.  He also reported that his "sugars" had been better since he had been off work.   Dr. Magurno noted a history of heart disease, heart attacks, and diabetes, as well as hypertension, noting that plaintiff did not monitor his blood pressure.  Plaintiff complained of chest pain, and reported that he cooked four days per week, performed light cleaning, took care of his personal needs, watched television, went for walks, and socialized with friends.

6

Dr. Magurno observed that plaintiff's gait was normal, and his blood pressure was 110/80.  Plaintiff's chest was clear, and percussion was normal. Notably, examination of plaintiff's heart showed regular rhythm, and Dr. Magurno noted post myocardial infarction in left fifth intercostal space at midclavicular line, with no murmur gallop, or rub audible.   Plaintiff's cervical and lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  Plaintiff's thoracic spine showed no scoliosis,  kyphosis, or abnormality.  Plaintiff had a full range of motion of shoulders, elbows, forearms, hips, knees and ankles bilaterally.  Finding all other areas to be normal, Dr. Magurno concluded that  plaintiff's prognosis was stable, and that he should avoid strenuous activity, heavy lifting and carrying due to coronary artery disease. Plaintiff had moderate limitations for bending due to obesity, and mild visual limitations.  Dr. Magurno found  no physical limitations for standing,  sitting, fine motor of the hands, reaching, and pushing and pulling of very light objects.

On February 20, 2008, plaintiff attempted a Bruce Protocol Treadmill Exercise test which was aborted when plaintiff was unable to continue after three minutes and fourteen seconds due to shortness of breath.  However, only a mild increase in heart rate was noted before the test was aborted.  On February 28, 2008, a Persantine Dual Isotope Myocardial Perfusion Scan revealed a moderate to large

area of inferior, inferolateral and lateral ischemia. On March 3, 2008, Dr. Rehman revised plaintiff's diagnosis to probable small vessel disease; noncardiac chest pain and occasional angina pectoris; diabetes mellitus; obesity; and probable sleep apnea. Rehman wrote that plaintiff was unable to work due to the aforementioned conditions. On June 6, 2008, Dr. Rehman wrote to plaintiff's counsel, advising her that plaintiff had chronic stable angina due to small vessel disease, and was unlikely to be employable for exertional work, but as far as plaintiff's cardiac status was concerned, plaintiff could perform sedentary jobs.

On March 12, 2008, plaintiff saw a sleep disorder specialist for evaluation of his asleep apnea. He was prescribed a continuous positive airway pressure ("CPAP") device. Plaintiff reported improvement of his sleep apnea at a follow-up visit on July 31, 2008, and reported continued improvement throughout 2008. On October 2, 2008, plaintiff's pulmonary function test was normal.

On June 30, 2008, Dr. Ramanujan reported that he had treated plaintiff for rectal bleeding and noted that plaintiff had five myocardial infarctions in less than one year. On September 19, 2008, Dr. Ramanujan reported that plaintiff could occasionally lift and carry up to ten pounds, sit for two hours and stand/walk for one half to one hour at a time without interruption, and sit for five hours, stand for two hours, and walk for one hour in an eight hour workday. Dr. Ramanujan opined

that plaintiff could never reach, push or pull with his hands and could occasionally

handle, finger and feel.  Plaintiff could operate foot controls with his right hand

and left foot, but could never climb stairs, balance, stoop, kneel, crouch or crawl.

Plaintiff could never be exposed to unprotected heights, moving mechanical parts,

operating a motor vehicle, humidity and wetness, dust, odors, fumes, extreme heat

and cold, and vibrations.  Dr. Ramanujan reported that plaintiff was morbidly

obese.  Dr. Ramanujan revised his count to four myocardial infarctions in the last

year, and also stated that plaintiff had chronic fatigue, shortness of breath, and

angina for which he took nitroglycerine five to six times per week.

On December 10, 2008, plaintiff saw Dr. Ramanujan for a follow-up

appointment, complaining of chest pain and continued shortness of breath on

exertion.  At that visit, plaintiff weighed 315 pounds.  His heart and chest

examinations were normal, and Dr. Ramanujan stated that plaintiff should continue

his medications and lose weight. He also stated that plaintiff could not perform

work that required exertion.

On June 1, 2009, plaintiff again saw Dr. Rehman for chest pain which,

plaintiff reported, occasionally caused vomiting, but the nitroglycerin tablets

worked to relieve the pain.  Plaintiff's heart and chest examination were normal.

Once again, Dr. Rehman opined that plaintiff could not do exertional work but

9

could do sedentary work, advising plaintiff to have his disability physical conducted elsewhere as he could only comment on plaintiff's cardiac status. A second persantine stress test performed on June 3, 2009 found that the resting EKG was normal, with no arrhythmias, and was negative for ischemia. The Persantine Dual Isotope Myocardial Perfusion Scan results showed a moderate size area of inferior, inferolateral and apical reversible ischemia.

Plaintiff submitted additional medical evidence after the ALJ's decision, including an intellectual assessment by a licensed psychologist, stating a verbal IQ score of 76, a performance IQ score of 84, and a full scale IQ score of 78. The psychologist opined, inter alia, that plaintiff would have difficulty learning new tasks, comprehending and following anything but simple directions, and require a good deal of repetition to successfully learn new tasks.

Plaintiff also reported an emergency room visit at Oswego Hospital for chest pain on September 13, 2009. He was discharged with a diagnosis of atypical chest pain and diabetes mellitus. On November 9, 2009, Dr. Ramanujan opined that plaintiff required complete freedom to rest frequently without restriction, and that his angina would result in plaintiff having a substantial number of absences from work, adding that plaintiff was permanently and totally disabled. Plaintiff's weight at that time was 318 pounds, and Dr. Ramanujan stated that plaintiff's weight

caused more stress to his heart.

## II.  Discussion

Plaintiff submits that the ALJ's RFC is unsupported, in that the plaintiff's intellectual deficits and obesity were not properly assessed, nor were the opinions of plaintiff's treating sources properly assessed.   Plaintiff also argues that the ALJ erred in his assessment of plaintiff's credibility.  The Commissioner argues that the ALJ's decision, that plaintiff was not disabled, is supported by substantial evidence and therefore must be affirmed.

### A.    Standard of Review

This court does not review a final decision of the Commissioner <u>de novo</u>, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  <u>Butts v. Barnhart</u>, 388 F.3d 377, 384 (2d Cir. 2004) (internal citations omitted).  <u>See also</u> <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004);  <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Halloran</u>, 362 F.3d at 31 (<u>quoting</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).  "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision." Gravel v. Barnhart,

360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d

582, 587 (2d Cir. 1984)).   When reviewing a determination by the Commissioner,

a district court, in its discretion, "shall have the power to enter, upon the pleadings

and transcript of record, a judgment affirming, modifying, or reversing the decision

of the Commissioner of Social Security, with or without remanding the cause for a

rehearing."  42 U.S.C. § 405(g).

### B.    Disability Defined

An individual is considered disabled for purposes of his or her eligibility for

Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment
> which can be expected to result in death or which has
> lasted or can be expected to last for a continuous period
> of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security

Disability to be disabled

> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of
> substantial gainful work which exists in the national

economy, regardless of whether such work exists in the
immediate area in which he lives, or whether a specific
job vacancy exists for him, or whether he would be hired
if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential

evaluation process, by which the Commissioner is to determine whether an

applicant for Social Security Disability is disabled pursuant to the aforementioned

statutory definition.  See 20 C.F.R. § 404.1520.  The Second Circuit Court of

Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to
> determine whether the claimant is presently employed. If
> the claimant is not employed, the Secretary then
> determines whether the claimant has a "severe
> impairment" that limits [his] capacity to work. If the
> claimant has such an impairment, the Secretary next
> considers whether the claimant has an impairment that is
> listed in Appendix 1 of the regulations. When the
> claimant has such an impairment, the Secretary will find
> the claimant disabled. However, if the claimant does not
> have a listed impairment, the Secretary must determine,
> under the fourth step, whether the claimant possesses the
> residual functional capacity[5] to perform [his] past
> relevant work. Finally, if the claimant is unable to
> perform [his] past relevant work, the Secretary determines
> whether the claimant is capable of performing any other

---

[5]     Residual functional capacity ("RFC") refers to what a claimant can still do in a
work setting despite any physical and/or mental limitations caused by his or her impairments and
any related symptoms, such as pain.  An ALJ must assess the patient's RFC based on all the
relevant evidence in the case record. See 20 C.F.R. § 404.1545 (a)(1).

work. If the claimant satisfies [his] burden of proving the
requirements in the first four steps, the burden then shifts
to the Secretary to prove in the fifth step that the claimant
is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d
41, 46 (2d Cir. 1996)).

The fifth step "requires the [ALJ] to consider the so-called vocational factors

(the claimant's age, education, and past work experience), and to determine

whether the claimant is capable of performing other jobs existing in significant

numbers in the national economy." Quezada v. Barnhart, 2007 WL 1723615

(S.D.N.Y. 2007) (internal quotations omitted).

A person is deemed disabled if he or she is unable to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months.

Substantial work activity is defined as "work activity that involves doing

significant physical or mental activities.  Your work may be substantial even if it is

done on a part-time basis or if you do less, get paid less, or have less responsibility

than when you worked before."  Gainful work activity is defined as "work activity

that you do for pay or profit.  Work activity is gainful if it is the kind of work

usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §

404.1572(a-b) (West 2009).

## C.    The Treating Physician's Rule

According to the "treating physician's rule,"[6] the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 2003 WL 21545097 at *6 (2d Cir.2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).

"Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it 'extra weight' under certain circumstances." Comstock v. Astrue, 2009 WL 116975 at * 4 (N.D.N.Y. 2009).

> Under C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.

Comstock, 2009 WL 116975 at *4.

---

[6]      "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. SS 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. 2003).

D.      **Credibility Assessment**

An ALJ is required to evaluate a claimant's credibility concerning pain according to the factors set forth in 20 C.F.R. § 404.1529, which states in pertinent part that:

> [i]n determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence ... These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.

20 C.F.R. § 404.1529 (West 2007).

Social Security Ruling ("SSR") 96-7p governs how ALJs may evaluate the credibility of an individual's statements.  Stated here in pertinent part:

> The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the

16

disability determination or decision. In particular, this Ruling emphasizes that:

1. No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any

17

other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered"or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight....

SSR 96-7 (See www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html (2012)

## D.    Analysis

In the case at bar, the ALJ applied the a five-step sequential evaluation process and determined that plaintiff (1) meets the insured status requirement of the Social Security Act through December 31, 2011; (2) has not engaged in substantial gainful activity since September 25, 2007 (20 CFR 404.1571 et seq. and 416.971 et seq.); (3) has the following severe impairments: status-post-myocardial infarction, coronary artery disease, insulin dependent diabetes mellitus and obesity (20 CFR §§ 404.1520(c) and 416.920(c)); (4) does not have an impairment or combination

of impairments that meets or medically equals one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and

416.926). Specifically, the ALJ wrote that plaintiff has coronary artery disease and

suffered a myocardial infarction in October 2007. The results of a cardiac

catheterization showed a 90% lesion in the left circumflex artery and plaintiff

underwent angioplasty with a stent placement. Plaintiff was subsequently

diagnosed with chronic angina which is stable with a regimen of medication.   In

addition, plaintiff's insulin dependent diabetes mellitus remains under satisfactory

control, with no evidence of end organ damage. At Step 5, the ALJ held that the

plaintiff retains the physical residual functional capacity to perform the full range

of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).

   First, plaintiff submits that the ALJ's RFC is unsupported, in that the

plaintiff's intellectual deficits and obesity were not properly assessed, nor were the

opinions of plaintiff's treating sources properly assessed.   The ALJ did in fact

address plaintiff's intellectual deficits (Tr. 17), finding that plaintiff indicated,

when he initially filed for disability benefits, that he could read and write and had

completed ninth grade.  At his hearing, he testified that he had completed eighth

grade.  The ALJ noted that while plaintiff may have difficulty reading and writing,

the evidence does not suggest that plaintiff cannot read and write simple messages

such as instructions or inventory lists.  The ALJ also notes that plaintiff has a driver's license, which entails passing a test requiring comprehending and answering questions related to driving.  The ALJ found that plaintiff did not establish that he is illiterate, and based on the record, which indicates this was an eleventh hour argument at odds with plaintiff's initial application, the court concurs.

Plaintiff argues that the ALJ did not properly assess plaintiff's obesity, asserting that simply mentioning plaintiff's obesity without expressly considering its effect is error.  The Commissioner argues that the ALJ found that plaintiff is obese, but that this impairment did not meet or equal the criteria of any impairment found in the listing of impairments.  In addition, the ALJ noted several times throughout his decision that plaintiff was an obese individual, and that plaintiff's obesity caused some limitations in his ability to work.  The Commissioner notes that the ALJ considered the effect of plaintiff's obesity in evaluating plaintiff's other conditions pursuant to SSR 02-1p, as he was required to do.  The court finds that the ALJ followed the proper procedures in evaluating plaintiff's obesity, and finds plaintiff's arguments to the contrary unavailing.

Regarding the ALJ's assessment of plaintiff's treating sources, plaintiff correctly asserts that the opinion of a treating physician is binding if it is supported

by medical evidence and is not contradicted by substantial evidence.  Plaintiff

argues that Dr. Ramanujan made a function by function assessment three times, and

made it clear that the assessment was on the basis of all conditions, including the

cardiac problems, diabetes, rectal bleeding, and obesity, specifically indicating that

plaintiff's obesity exacerbated the functional limitations caused by the other

medical conditions.  The ALJ gave only partial weight to the assessment provided

by Dr. Ramanujan, because it limited the plaintiff to less than the full range of

sedentary work.  In fact, the court noted glaring errors in Dr. Ramanujan's medical

information, which the ALJ mentions in his decision.  Dr. Ramanujan erroneously

reported four to five myocardial infarctions, while the record reports one, and the

court presumes Dr. Ramanujan based his medical assessment on this

misinformation.  Overall, Dr. Ramanujan's assessment that plaintiff could perform

less than sedentary work is contradicted throughout the record.  Plaintiff's heart

and lung examinations were normal.  His CPAP device improved his sleep apnea

and his pulmonary function test was normal.  Plaintiff's gait was normal and he had

full strength and range of motion in his extremities.  In addition, Dr. Ramanujan's

assessment contradicted that of Dr. Magurno, whose assessment, based on the

court's examination of the transcript, is substantially supported by the medical

record.  Plaintiff's self-reporting of his daily activities, which include cooking,

21

light cleaning, personal care, taking walks, driving a car, watching television and

socializing with friends also contradicts Dr. Ramanujan's assessment of plaintiff.

Dr. Rehman, plaintiff's cardiologist, reported one myocardial infarction, and

stated that plaintiff could perform sedentary work.  This was consistent with the

medical record and the ALJ gave Dr. Rehman's assessment considerable weight

despite the fact that Dr. Rehman did not provide a function by function assessment.

 The court finds that the ALJ did not violate the requirements of the treating

physician's rule.

Plaintiff also argues that the ALJ erred in his assessment of plaintiff's

credibility.  In consideration of plaintiff's credibility, the ALJ noted several

inconsistencies between plaintiff's assertions and the medical record.  In its

comprehensive review of the administrative transcript, the court also noted several

inconsistencies in plaintiff's information submissions.  For instance, plaintiff stated

that he had a second myocardial infarction on New Year's Eve, 2007, after playing

with his grandchildren.  Plaintiff did visit an emergency room due to chest pain on

January 1, 2008, but the evidence does not establish that a myocardial infarction

occurred.  As stated above, Dr. Ramanujan, an endocrinologist who treated plaintiff

for his diabetes,  reported in June 2008 that plaintiff had five myocardial

infarctions in less than a year, and reported in September of 2008 that plaintiff had

previously experienced four myocardial infarctions. Tr. 15.  Dr. Rehman, plaintiff's

treating cardiologist, reported that plaintiff had chronic stable angina, but no

additional infarctions after the October 2007 attack.

Plaintiff also testified at his hearing that his vision and teeth have been

affected by his diabetes.  He alleges that he now needs bifocals and that his teeth

have rotted.   However, Dr. Ramanujan reports no evidence of retinopathy or

gum/teeth problems related to plaintiff's diabetes.  Plaintiff also testified about his

inability to drive pursuant to doctor's orders, but the record reveals no evidence

that he was advised not to drive by any physician.  Plaintiff submits an intellectual

assessment stating that his IQ is in the 70s, but had previously provided

information that, inter alia, in his past employment, he had supervised workers.  In

sum, the ALJ determined that plaintiff's medically determinable impairments could

reasonably be expected to cause the symptoms of which plaintiff complains, but

plaintiff's statements concerning the intensity, persistence and limiting effects of

these symptoms are not credible to the extent that they are inconsistent with

plaintiff's RFC assessment.  After a comprehensive review of the administrative

transcript, the court concurs with the ALJ's findings on credibility.

**III.    Conclusion**

Accordingly, for the reasons set forth above, plaintiff's motion for judgment on the pleadings (Doc. No. 14) is DENIED, and the Commissioner's motion for judgment on the pleadings (Doc. No. 15) is hereby GRANTED.  The Clerk is instructed to close this case.

SO ORDERED.

July 10, 2012

_____
Neal P. McCurn
Senior  U.S. District Judge